UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY ALMA RAETZ, | No. 2:14-cv-0120 DAD |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[1] For the reasons explained below, plaintiff's motion is granted, defendant's cross-motion is denied, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with this order.

PROCEDURAL BACKGROUND

On July 29, 2010 and September 21, 2011, plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act alleging disability beginning

---

[1] Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c).  (See Dkt. Nos. 7 & 9.)

on July 1, 2009. (Transcript ("Tr.") at 21, 192-95, 197-206.) Plaintiff's applications were denied initially, (id. at 107-10), and upon reconsideration. (Id. at 113-17.)

Thereafter, plaintiff requested a hearing and hearings were held before an Administrative Law Judge ("ALJ") on January 23, 2012 and April 16, 2012. (Id. at 41-100.) Plaintiff was represented by an attorney and testified at those administrative hearings. (Id. at 41-44, 57-60.) In a decision issued on May 2, 2012, the ALJ found that plaintiff was not disabled. (Id. at 35.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since July 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*) and her work activity in 2010 totaling $664.14 was not consistent with SGA.
>
> 3. The claimant has the following severe impairments: gout, hypertension, chronic fatigue and weakness of undetermined etiology, post traumatic stress disorder, and bipolar I disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except no working at unprotected heights or around unprotected hazardous equipment and mentally can constantly perform simple job instructions but only occasionally perform detailed job instructions, can make adjustments to any work place changes, and can frequently interact with supervisors and co-workers but only occasionally interact with the general public.
>
>  6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on September 3, 1960 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

2

> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Id. at 23-35.)

On November 18, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's May 2, 2012 decision. (Id. at 1-3.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on January 16, 2014.

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

3

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

In her pending motion plaintiff asserts the following two principal claims: (1) the ALJ improperly rejected plaintiff's own subjective testimony; and (2) the ALJ erred in his treatment of the medical opinion evidence of record.[2] (Pl.'s MSJ (Dkt. No. 19) at 13-24.[3])

**I.   Plaintiff's Subjective Testimony**

Plaintiff argues that the ALJ erred by rejecting her own testimony concerning the severity of her mental impairments. (Id. at 20-24.)

/////

/////

/////

---

[2] The court has reordered plaintiff's claims for purposes of efficiency.

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ rejected plaintiff's testimony because plaintiff "performs daily activities that indicate an ability to perform simple and some detailed work," citing to "Exhibits 4E-6E & testimony." (Tr. at 31.) The Ninth Circuit, "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability.'" Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)). See also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"); Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity."). In general, the Commissioner does not consider "activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs" to be substantial gainful activities. 20 C.F.R. § 404.1572(c). "Rather, a Social Security claimant's activities of daily living may discredit her testimony regarding symptoms only when either (1) the activities 'meet the threshold for transferable work skills' or (2) the activities contradict her testimony." Schultz v. Colvin, 32 F.Supp.3d 1047, 1059 (N.D. Cal. 2014) (quoting Orn, 495 F.3d at 639).

Moreover, the evidence the ALJ cited in support of his finding that plaintiff's daily activities indicated her ability to perform work actually supported plaintiff's own testimony regarding the severity of her mental impairments. In this regard, Exhibits 4E-6E are two "FUNCTION REPORT-ADULT" and "FUNCTION REPORT-ADULT- THIRD PARTY" forms completed by plaintiff and her boyfriend. (Tr. at 229-67.) Throughout her own reports, plaintiff complains of suffering from "emotional outbursts," (id. at 231), of not brushing her hair "for several days" when she is depressed, (id. at 233), of needing someone to accompany her because of "fear," (id. at 235), and of "increased . . . isolation." (Id. at 236.) In the Third Party reports plaintiff's boyfriend stated that plaintiff's "depression seems to be getting to her," because she previously made "her own meals," but was "now microwaving her meals . . . ." (Id. at 240.) Moreover, he noted that plaintiff has "limited" social activity and is "not vary (sic) social w/ people she doesn't know." (Id. at 242-43.) In the Third Party reports he also stated that plaintiff

6

was sometimes found "crying uncontrollably" and "she doesn't know why she [is] crying." (Id. at 244.)

Plaintiff's hearing testimony, also cited by the ALJ in support of his credibility determination, was consistent with what was set out in those reports. In this regard, plaintiff testified at the April 16, 2012 hearing that on a daily or weekly basis she suffered "severe mood swings," obsessive thoughts, an inability to focus, trouble remembering words and fearfulness. (Id. at 84-85.) Plaintiff also testified that she suffered from PTSD related nightmares that impacted her sleep. (Id. at 87-88.)

The ALJ also rejected plaintiff's testimony because "St. Elizabeth Hospital records . . . erode her mental complaints as," plaintiff was hospitalized from June 1, 2009 to June 8, 2009, "not [for] any mental issues and examinations revealed only mild anxiety." (Id. at 31.) The ALJ went on to state that examinations "revealed on a sporadic basis disheveled looking, tearfulness, depressed mood, and anxious looking," but "[c]hart notes documented . . . her mood swings were better with Prozac, which partially refutes [plaintiff's] testimony as to the effectiveness of her medications in treating her mood swings." (Id.) The ALJ also noted that plaintiff had never been treated by a psychiatrist, "was not treated on a weekly or monthly basis," and that "no mental difficulties were perceived when she filed her applications . . . ." (Id. at 31-32.)

However, "after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity" of the symptoms. Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). See also Putz v. Astrue, 371 Fed. Appx. 801, 802-03 (9th Cir. 2010) ("Putz need not present objective medical evidence to demonstrate the severity of her fatigue.")[4]; Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) ("If an adjudicator could reject a claim for disability simply because a claimant fails to produce medical evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings."). The Ninth Circuit "has particularly criticized the use of a lack of treatment

---

[4] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1299-300 (9th Cir. 1999) (quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)). Moreover, as will be discussed below, plaintiff's testimony was consistent with, and supported by, the opinion of the examining physician and the treatment record.

The only remaining reason offered by the ALJ in support of his rejection of plaintiff's testimony is the ALJ's finding that plaintiff's testimony conflicted with the opinion of the nonexamining state agency physician. In this regard, the ALJ found that plaintiff's "mental complaints and alleged functional limitations," were "no more than slightly too (sic) partially credible as the [nonexamining] SA determined claimant had the capability to work." (Tr. at 31.)

However, as one district court explained,

> Non-examining medical consultants are specialists in synthesizing medical evidence for vocational purposes, and, because they never meet or observe the plaintiff in question, are not in a position to undermine a plaintiff's credibility in relation to his/her subjective allegations so long as those allegations could reasonably be expected to arise from the plaintiff's documented impairments; only when a plaintiff's subjective allegations are inconsistent with the medical impairments or relevant observations of record is a nonexamining consultant in a position to undermine the credibility of a Plaintiff's subjective allegations.

Ingram v. Astrue, No. 11-CV-3026-DEO, 2012 WL 4471116, at *9 (N.D. Iowa Sept. 26, 2012). , "A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record." Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984). See also Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990) ("The nonexamining physicians' conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician."); Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) ("a non-examining physician's opinion cannot, by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record"); Gallant, 753 F.2d at 1456 ("Although claimant's testimony of his persistent, disabling pain is corroborated

by the medical reports of eleven treating physicians, the ALJ rejected this strong evidence in favor of insubstantial evidence – i.e., the report of non-treating, non-examining physician, combined with the ALJ's own observance of claimant's demeanor at the hearing.  Therefore, the ALJ's finding that Gallant's allegations of severe pain do not preclude substantial gainful activity is not supported by substantial evidence."); Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) ("This Court has said that the testimony of a non-examining, non-treating physician should be discounted and is not substantial evidence when totally contradicted by other evidence in the record."); Allen v. Weinberger, 552 F.2d 781, 786 (7th Cir. 1977) ("The opinions of Dr. Brav and Dr. Green also have little force.  Although their reports were not inadmissible as hearsay at the hearing before the ALJ . . . the weight to be attached to the reports must be considered in light of the fact that neither physician examined the plaintiff."); Landess v. Weinberger, 490 F.2d 1187, 1190 (8th Cir. 1973) ("We think these written reports, without personal examination of the claimant, deserve little weight in the overall evaluation of disability.  The advisers' assessment of what other [doctors] find is hardly a basis for competent evaluation without a personal examination of the claimant."); Browne v. Richardson, 468 F.2d 1003, 1006 (1st Cir. 1972) (the opinion of doctor that "neither examined the claimant nor testified at the hearing . . . . cannot be the substantial evidence needed to support a finding"); SSR 96-6p, 1996 WL 374180, at *2 ("the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record"). See generally Moore, 278 F.3d at 924 ("The clear and convincing standard is the most demanding required in Social Security cases.  It is the same as that required to reject the uncontradicted opinion of a treating physician.").

For all of the reasons stated above, the court finds that here the ALJ did not offer a clear and convincing reason for rejecting plaintiff's subjective testimony regarding the severity of her symptoms.  Accordingly, plaintiff is entitled to summary judgment in her favor with respect to this claim.

/////

/////

## II. Medical Opinion Evidence

Plaintiff also argues that the ALJ erred by rejecting the opinion of the examining psychologist, Dr. Michael Maguire. (Pl.'s MSJ (Dkt. No. 19) at 13-20.)

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen, 80 F.3d at 1285; Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990). The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. (Id. at 831.) In addition, greater weight should be given to the "'opinion of a specialist about medical issues related to his or her area of specialty.'" Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(5)). Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

Here, on January 6, 2011, Dr. Michael Maguire examined plaintiff and completed a "comprehensive psychiatric evaluation." (Tr. at 357.) Dr. Maguire's mental status examination found, in relevant part, that plaintiff was mildly disheveled and experiencing anxiety. (Id. at 358.) Dr. Maguire also observed that plaintiff's attitude and behavior were "[m]ildly elevated with some depression symptoms such as crying and negative speech reflecting negative

thoughts." (Id.) He also found that plaintiff's speech was also "pressured and tangential." (Id.)

Dr. Maguire concluded that plaintiff had a "[m]ixed hypomanic/depressed mood and behavior." (Id.) He also concluded that plaintiff's concentration was "mildly impaired," and that her "judgment/insight," was "currently okay," although Dr. Maguire "question[ed] it due to her frequent suicidal ideations." (Id. at 359.) Dr. Maguire found that plaintiff's GAF score was 45.[5]

With respect to plaintiff's prognosis, Dr. Maguire opined that plaintiff was

> currently displaying a mixed hypomanic/depressed mood episode state. She is not being adequately treated for her mood disorder. She is seeing a primary medical doctor who is treating her with only an antidepressant. Her prognosis will improve with proper psychiatric treatment.

(Id.)

Dr. Maguire then opined as to plaintiff's functional limitations. In this regard, Dr. Maguire found that plaintiff could perform simple tasks but could not perform detailed or complex tasks "due to mood instability." (Id.) Moreover, he concluded that plaintiff could "[n]ot currently" accept instructions from supervisors, interact with coworkers and the public. (Id.) Perhaps most importantly, it was Dr. Maguire's opinion that plaintiff was "[n]ot currently," capable of performing work activities on a consistent basis without special or additional instructions, or maintaining regular attendance in the workplace, completing a normal work day or work week without interruptions from a psychiatric condition or dealing with the usual stress encountered in the work place. (Id. at 360.)

The ALJ acknowledged the opinion of examining physician Dr. Maguire but "rejected" that opinion, "except for the finding that claimant could perform simple tasks," stating

> As for the opinion evidence, the undersigned rejected, except for the finding that the claimant could perform simple tasks, the medical opinions contained in the psychiatric CE as the SA determinations did not conclude the claimant was as limited (Exhibits 3A, 9F-10F & 16F). Additionally the opinions are not supported by the claimant's daily activities as set forth in the record

---

[5] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment. According to the DSM–IV, a GAF score between 41 and 50 describes 'serious symptoms' or 'any serious impairment in social, occupational, or school functioning.'" Garrison v. Colvin, 759 F.3d 995, 1003 (9th Cir. 2014) (citation and quotation omitted).

> (Exhibits 4E-6E) or by the medical findings during MSE at mental health and by the general lack of treatment the claimant sought from mental health. The limiting opinions are further rejected as treating records failed to document clinical findings or observations consistent with Dr. Maguire's (Exhibits 1F-2F, 7F-8F & 18F-24F). Lastly, the opinions, except as indicated above, are rejected as the record fails to document treatment consistent with the limitations such as individual or group therapy on a long-term basis, psychiatric hospitalizations, or crisis center contacts, and no mental difficulties were perceived when the claimant filed her applications (Exhibit 1E, p.2).

(Id. at 32-33.)

The ALJ's findings are deficient in several respects. First, as noted above, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Ryan, 528 F.3d at 1202. Moreover, although the ALJ stated that "the SA determinations did not conclude the claimant was as limited," (Tr. at 32), that is not entirely true. As the defendant now concedes, "some of the state agency opinions conflicted" with one another as well as with the ALJ's own residual functional capacity determination. (Def.'s MSJ (Dkt. No. 20) at 4.)

In this regard, the February 28, 2011 "PSYCHIATRIC REVIEW TECHNIQUE," completed by Dr. Deborah Hartley, a nonexamining state agency physician, found that plaintiff was moderately impaired in her ability to maintain social functioning, concentration, persistence or pace. (Id. at 414.) Dr. Hartley's "MENTAL RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT," found that plaintiff was markedly limited in her ability to understand, remember and carry out detailed instructions, as well as in her ability to interact appropriately with the general public. (Id. at 418-19.) It was Dr. Hartley's opinion that plaintiff could perform simple tasks with routine supervision but could not relate to the general public. (Id. at 420.) Despite citing nonexamining state agency physician Dr. Harley's opinion as a reason to reject examining physician Dr. Maguire's opinion, the ALJ ultimately found that plaintiff had the residual functional capacity to occasionally perform detailed job instructions and occasionally interact with the general public. (Id. at 26.) That finding by the ALJ, however, directly conflicts with the cited opinion of Dr. Hartley.

/////

1    Moreover, for the reasons noted above, plaintiff's daily activities are consistent with the
2    findings reflected in examining physician Dr. Maguire's opinion.  In this regard, plaintiff reported
3    suffering frequently from depression, isolation, anxiety, mood swings, etc., which impacted her
4    activities of daily living.

5    Finally, plaintiff's substantial mental health treatment records are also consistent with Dr.
6    Maguire's opinion regarding her mental impairments and their impact upon her.  In this regard, a
7    May 17, 2011 Tehama County Health Services Agency Mental Health Division, ("Mental
8    Health"), treatment record reflects that plaintiff was suffering from depression and anger issues.[6]
9    (Id. at 470.)  According to those medical records, plaintiff was found to have suicidal ideation,
10   circumstantial flow of thought, a depressed mood and sensitive behavior.  (Id. at 427.)  Her then
11   current functional impairments included trouble controlling impulsive behaviors and maintaining
12   her own safety and the safety of others.  (Id.)  A June 7, 2011 Mental Health treatment record
13   reflects that plaintiff was at that time "anxious, depressed, hopeless."  (Id. at 462.)  It was noted
14   that plaintiff had a significant impairment in her activities of daily living.  (Id. at 468.)  A June 22,
15   2011 office visit at "Greenville Rancheria," found that plaintiff presented "with anxiety," was
16   "referred to Mr. Kinney of Mental Health," had her "[p]rozac renewed for depression," and was
17   "clearly instructed to go to ER if she feels suicidal."  (Id. at 502.)

18   An October 14, 2011 "Psychiatric Services Initial Evaluation," found plaintiff was
19   suffering from depression, anxiety and trouble "managing moods," with a GAF of 55.[7]  (Id. at
20   486.)  A December 23, 2011 "Psychiatric Services Follow-Up Evaluation," found that plaintiff
21   had "racing thoughts," was depressed, agitated and tearful.  (Id. at 483.)  Plaintiff was diagnosed
22   at that time as suffering with "PTSD and Bipolar II."  (Id.)  At both a January 13, 2012 and a
23   March 16, 2012, "Check Up," plaintiff complained of experiencing problems with depression and
24   anger, and was diagnosed with "[p]osttruamatic stress disorder" and "unspecified bipolar
25   /////

---

[6] The record states, referring to the plaintiff, that "yesterday pulled kit knife on B.F." (Tr. at 470.)

[7] "A GAF score between 51 to 60 describes 'moderate symptoms' or 'any moderate difficulty in social, occupational, or school functioning.'"  Garrison, 759 F.3d at 1003.

13

disorders." (Id. at 647-48, 660-61.)  It was also noted at that time that plaintiff's prescribed medications included Prozac, Prazosin, Trileptal and Temazepam.[8]  (Id. at 652.)

As noted above, the Ninth Circuit "has particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'"  Regennitter, 166 F.3d at 1299-300.  See also Ferrando v. Commissioner of Social Sec. Admin., 449 Fed. Appx. 610, 611 (9th Cir. 2011) ("Ferrando's failure to seek treatment for his mental illness before December 2006 is not a clear and convincing reason to reject his psychiatrist's opinion"); Perez v. Astrue, 247 Fed. Appx. 931, 935 (9th Cir. 2007) ("It is particularly troubling that her failure to pursue aggressive, expensive, psychiatric treatment for depression was held against her.").[9]

Accordingly, for all of the reasons stated above, the court finds that the ALJ failed to offer specific and legitimate reasons supported by substantial evidence in the record to reject the opinion of the examining physician, Dr. Maguire.  Plaintiff, therefore, is also entitled to relief with respect to this claim.

### SCOPE OF REMAND

With error established, the court has the discretion to remand or reverse and award benefits.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly

---

[8] "Prozac is an antidepressant."  Baty v. Barnhart, 512 F.Supp.2d 881, 885 (W.D. Tex. 2007). "Prazosin can be used to treat sleep problems associated with post-traumatic stress disorder." Ramo v. Colvin, Civil No. 13-1233 (JRT/JJK), 2014 WL 896729, at *5 (D. Minn. Mar. 6, 2014). "Trileptal is an anticonvulsant and mood stabilizing drug, used primarily in the treatment of epilepsy.  It is also used to treat anxiety and mood disorders."  Tarver v. Astrue, No. EDCV 08-1416 MLG, 2009 WL 2711888, at *5 (C.D. Cal. Aug. 25, 2009).  "Temazepam is used to treat insomnia symptoms, such as trouble falling or staying asleep." Ward v. Astrue, No. 2:11-cv-2033, 2012 WL 2190615, at *4 (W.D. Ark. June 14, 2012).

[9] See fn. 4, above.

> discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021. See also Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, although it is clear that plaintiff was not capable of performing work activities on a consistent basis when examining physician Dr. Maguire rendered his January 6, 2011 opinion, Dr. Maguire expressly limited his opinion to plaintiff's then current status. At that time it was also Dr. Maguire's opinion that plaintiff's prognosis would improve "with proper psychiatric treatment." (Tr. at 359.) Although plaintiff's testimony and treatment records provide some evidence of a continued impairment, the record before the court is nonetheless uncertain and ambiguous as to precisely when, and for how long, plaintiff remained unable to perform work activities prior to and/or after Dr. Maguire's January 6, 2011 opinion was rendered. Accordingly, this matter must be remanded for further proceedings. Upon remand, in proceeding through the sequential evaluation, the ALJ shall afford the proper weight to Dr. Maguire's January 6, 2011 opinion and plaintiff's subjective testimony.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 19) is granted;
2. Defendant's cross-motion for summary judgment (Dkt. No. 20) is denied;
3. The Commissioner's decision is reversed; and
4. This matter is remanded for further proceedings consistent with this order.

Dated: September 11, 2015

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6

Ddad1\orders.soc sec\raetz0120.ord.docx